## JULIAN LIEB v. DEPARTMENT OF HEALTH SERVICES (5503)

DALY, NORCOTT and FOTI, Js.

Argued December 8, 1987—decision released June 7, 1988

---

*Richard J. Lynch,* assistant attorney general, with whom, on the brief, were *Joseph I. Lieberman,* attorney general, and *Lisa H. Oliveri,* assistant attorney general, for the appellant (defendant).

*David W. Skolnick,* with whom, on the brief, was *Patricia Kilkenny,* for the appellee (plaintiff).

DALY, J. The defendant appeals from the trial court's granting of the plaintiff's motion to quash a subpoena duces tecum served on the plaintiff by the defendant. The trial court quashed the subpoena on the ground that the information sought was protected by the psychiatrist-patient privilege created by the legislature.

The sole issue on appeal is whether General Statutes § 19a-14 (a) (10),[1] which authorizes the department of health to investigate members of the health profession, overrides the psychiatrist-patient privilege of General Statutes § 52-146e (a).[2] In holding that the legislature did not intend the psychiatrist-patient privilege to be

[1] General Statutes § 19a-14 (a) provides in relevant part: "The department of health services shall have the following powers and duties with regard to the boards and commissions . . . which are within the department of health services. The department shall: . . . (10) Conduct any necessary . . . investigation regarding . . . possible violations of statutes or regulations, and disciplinary matters. In connection with any investigation, the commissioner of health services or said commissioner's authorized agent may administer oaths, issue subpoenas, compel testimony and order the production of books, records and documents . . . ."

[2] General Statutes § 52-146e (a) provides: "All communications and records as defined in section 52-146d [between psychiatrist and patient] shall be confidential . . . . Except as provided in sections 52-146f to 52-146i, inclusive, no person may disclose or transmit any communications and records . . . without the consent of the patient or his authorized representative."

nullified by General Statutes § 19a-14 (a) (10), we find no error in the trial court's decision.

The facts are not in dispute. The plaintiff, Julian Lieb, a physician licensed in this state, is engaged in the private practice of psychiatry. Lieb is on the faculty of the University of Connecticut School of Medicine and is widely respected by those in the profession as a specialist in the treatment of depression. Several of the plaintiff's patients suffer from severe depressive disorders for which he has prescribed psychostimulant medication. On March 27, 1986, the department of health services (hereinafter department) requested that the plaintiff attend a "compliance conference,"[3] a meeting which addresses the concerns of the profession. Specifically, the department sought information regarding the plaintiff's prescribing of the psychostimulant medication. The plaintiff voluntarily attended this conference where various prescriptions and the amount of medications prescribed were discussed. Subsequently, the department contacted six of the plaintiff's patients in an attempt to secure consent for their medical records for the department's records. The plaintiff, in an attempt to address the concerns of the department while protecting the confidentiality of his patients, provided blind case summaries from which the personal communications of the patients had been deleted. Despite an unsuccessful attempt to secure consent from the patients, the department issued a subpoena duces

---

[3] This compliance conference was held pursuant to General Statutes § 4-182 (c) which provides: "No revocation, suspension, annulment or withdrawal of any license is lawful unless, prior to the institution of agency proceedings, the agency gave notice by mail to the licensee of facts or conduct which warrant the intended action, and the licensee was given an opportunity to show compliance with all lawful requirements for the retention of the license. If the agency finds that public health, safety or welfare imperatively requires emergency action, and incorporates a finding to that effect in its order, summary suspension of a license may be ordered pending proceedings for revocation or other action. These proceedings shall be promptly instituted and determined."

tecum to the plaintiff, requiring him to provide the complete patient records of five named patients, relevant medical records, notes, medication sheets, and medical releases provided by the patients.

On July 1, 1986, the plaintiff moved pursuant to General Statutes § 52-146f[4] to quash the department's subpoena. The trial court, on September 2, 1986, granted the motion.

The defendant argues that the public policy concerns which enable the department to investigate the qualifications of licensed physicians supersede the psychiatrist-patient privilege. In support of its argument, the department cites *In re Board of Medical Review Investigation,* 463 A.2d 1373 (R.I. 1983). The state legislature of Rhode Island had authorized the board to investigate allegations of professional misconduct within the medical field and a physician appealed from the trial court's denial of his motion to quash a subpoena duces tecum. The Rhode Island Supreme Court upheld the lower court's ruling, stating: "A physician under investigation for professional misconduct subverts rather than supports the rights of the patient by distorting the patient's privilege to his own ends." Id., 1376. The defendant further maintains that General Statutes § 52-146f[5] enumerates the situations in which consent

[4] General Statutes § 52-146j (a) provides: "Any person aggrieved by a violation of sections 52-146d to 52-146j, inclusive, may petition the superior court for the judicial district in which he resides, or, in the case of a nonresident of the state, the superior court for the judicial district of Hartford-New Britain, for appropriate relief, including temporary and permanent injunctions, and the petition shall be privileged with respect to assignment for trial."

[5] General Statutes § 52-146f provides: "CONSENT NOT REQUIRED FOR DISCLOSURE, WHEN. Consent of the patient shall not be required for the disclosure or transmission of communications or records of the patient in the following situations as specifically limited:

"(1) Communications or records may be disclosed to other persons engaged in the diagnosis or treatment of the patient or may be transmitted to another mental health facility to which the patient is admitted for

of the patient is not required, specifically, subsection six which provides "[c]ommunications or records may

diagnosis or treatment if the psychiatrist in possession of the communications or records determines that the disclosure or transmission is needed to accomplish the objectives of diagnosis or treatment. The patient shall be informed that the communications or records will be so disclosed or transmitted. For purposes of this subsection, persons in professional training are to be considered as engaged in the diagnosis or treatment of the patients.

"(2) Communications or records may be disclosed when the psychiatrist determines that there is substantial risk of imminent physical injury by the patient to himself or others or when a psychiatrist, in the course of diagnosis or treatment of the patient, finds it necessary to disclose the communications or records for the purpose of placing the patient in a mental health facility, by certification, commitment or otherwise, provided the provisions of sections 52-146d to 52-146j, inclusive, shall continue in effect after the patient is in the facility.

"(3) Except as provided in section 17-295c, the name, address and fees for psychiatric services to a patient may be disclosed to individuals or agencies involved in the collection of fees for such services. In cases where a dispute arises over the fees or claims or where additional information is needed to substantiate the fee or claim, the disclosure of further information shall be limited to the following: (A) That the person was in fact a patient; (B) the diagnosis; (C) the dates and duration of treatment; and (D) a general description of the treatment, which shall include evidence that a treatment plan exists and has been carried out and evidence to substantiate the necessity for admission and length of stay in a health care institution or facility. If further information is required, the party seeking the information shall proceed in the same manner provided for hospital patients in section 4-105.

"(4) Communications made to or records made by a psychiatrist in the course of a psychiatric examination ordered by a court or made in connection with the application for the appointment of a conservator by the probate court for good cause shown may be disclosed at judicial or administrative proceedings in which the patient is a party, or in which the question of his incompetence because of mental illness is an issue, or in appropriate pretrial proceedings, provided the court finds that the patient has been informed before making the communications that any communications will not be confidential and provided the communications shall be admissible only on issues involving the patient's medical condition.

"(5) Communications or records may be disclosed in a civil proceeding in which the patient introduces his mental condition as an element of his claim or defense, or, after the patient's death, when his condition is introduced by a party claiming or defending through or as a beneficiary of the patient and the court or judge finds that it is more important to the inter-

be disclosed to the commissioner of health services in connection with any inspection, investigation or examination of an institution . . . ." We find that the defendant's argument is without merit.

We begin our analysis by noting that in Connecticut there is no common law physician-patient privilege. *Zeiner* v. *Zeiner,* 120 Conn. 161, 167, 179 A.2d 644 (1935) ("information acquired by physicians in their professional capacity has never been privileged"). Our legislature has created a privilege to cover "all oral and written communications and records thereof relating to diagnosis or treatment of a patient's mental condition between the patient and psychiatrist, or between any of such persons and a person participating under the supervision of a psychiatrist in the accomplishment of the objectives of diagnosis and treatment, wherever made, including communications and records which occur in or are prepared at a mental health facility." General Statutes § 52-146d (2).

An examination of the statutes concerning the privilege is determinative of the issue in this case. Communications between a psychiatrist and a patient "shall be confidential and shall be subject to the provisions of sections 52-146d to 52-146j, inclusive. Except as provided in sections 52-146f to 52-146i, inclusive, no person may disclose or transmit any communications and records or the substance or any part or any resume thereof which identifies a patient to any person, corporation or governmental agency without the consent of the patient or his authorized representative." General

ests of justice that the communications be disclosed than that the relationship between patient and psychiatrist be protected.

"(6) Communications or records may be disclosed to the commissioner of health services in connection with any inspection, investigation or examination of an institution, as defined in subsection (a) of section 19a-490, authorized under section 19a-498."

Statutes § 52-146e (a).[6] In the enactment of the privilege statute, our legislature anticipated circumstances in which disclosure might be appropriate. General Statutes § 52-146f (1) through (6) dictates six statutory exceptions to the privilege which, however, are inapplicable to this case. The defendant vigorously argues that the statutory exception of General Statutes § 52-146f (6) quoted above is determinative of this case. The defendant's argument is incorrect as subsection (6) clearly applies to the investigation of institutions and not individual psychiatrists.

This court has recently stated that "[i]t is axiomatic that courts are required to read a statute in light of its purpose." *State* v. *Rado,* 14 Conn. App. 322, 329, 541 A.2d 124 (1988). It is commonly understood that "the purpose of the privilege is to give to the patient an incentive to make full disclosure to a physician in order to obtain effective treatment free from the embarrassment and invasion of privacy which could result from a doctor's testimony." *State* v. *White,* 169 Conn. 223, 234–35, 363 A.2d 143, cert. denied, 423 U.S. 1025, 96

---

[6] General Statutes § 52-146e provides: "DISCLOSURE OF COMMUNICATIONS. (a) All communications and records as defined in section 52-146d shall be confidential and shall be subject to the provisions of sections 52-146d to 52-146j, inclusive. Except as provided in sections 52-146f to 52-146i, inclusive, no person may disclose or transmit any communications and records or the substance or any part or any resume thereof which identify a patient to any person, corporation or governmental agency without the consent of the patient or his authorized representative.

"(b) Any consent given to waive the confidentiality shall specify to what person or agency the information is to be disclosed and to what use it will be put. Each patient shall be informed that his refusal to grant consent will not jeopardize his right to obtain present or future treatment except where disclosure of the communications and the records is necessary for the treatment.

"(c) The patient or his authorized representative may withdraw any consent given under the provisions of this section at any time in a writing addressed to the person or office in which the original consent was filed. Withdrawal of consent shall not affect communications or records disclosed prior to notice of the withdrawal."

S. Ct. 469, 46 L. Ed. 2d 399 (1975). In reviewing this statute, courts must presume that the legislature incorporated the purpose of the statute in every sentence, clause, phrase and item of punctuation of the statute. See B. Holden & J. Daly, Connecticut Evidence § 50. In this case, we must assume that if the legislature had intended to make the medical records of psychiatrists available to the department of health, it would have clearly and unequivocally expressed the intention to do so in the statutes. Requiring the judicial branch to create a procedure on a case by case basis is uncertain and undoubtedly unintended manner of execution.

The defendant correctly argues that the exceptions to the psychiatrist-patient privilege "are not limited to those found in General Statutes § 52-146f." *State* v. *Toste,* 178 Conn. 626, 629, 424 A.2d 293 (1979); *State* v. *White,* supra, 234. The defendant's claim, in substance, is that the department's statutory duty to conduct all necessary investigations of licensed physicians throughout the state constitutes a sufficient basis for an exception, in addition to those provided in § 52-146f, to the psychiatrist-patient privilege. The fact that the department, as licensing authority, is charged with the maintenance of health care standards pursuant to General Statutes § 20-13e is not in dispute. Moreover, it is not in contention that the department has the power to issue subpoenas and "order the production of books, records and documents" pursuant to General Statutes § 19a-14 (10).[7] These general provisions, however, do not permit the department to derogate the explicit statutory privilege between a psychiatrist and the patient. Our Supreme Court has held that, in construing two statutes, the clear language of a narrowly tailored provision is not to be superseded by the broad, general provisions of another statute. See, e.g., *Atwood* v. *Regional School Dist. No. 15,* 169 Conn. 613, 363 A.2d

---

[7] See footnote 1, supra.

1038 (1975). Furthermore, the general language providing the authority the power to carry out its duties is not specific enough to put a patient on notice that his or her communication with a psychiatrist would not be disclosed.

Furthermore, our holding today is substantiated by the department's failure to show reasonable cause for the production of complete patient records. Recently, the California Court of Appeals decided a case based on circumstances virtually identical to those in the present case. In *Wood* v. *Superior Court,* 166 Cal. App. 3d 1138, 1150, 212 Cal. Rptr. 811 (1985), the California medical quality board, similar to the department in the present case, conducted an investigation of physicians' practice of prescribing certain controlled substances. As in the present case, the board in *Wood* issued administrative subpoenas requiring the physician to produce complete medical records of certain named patients. The court overturned the trial court's order of compliance holding that the patient's privacy interests were invaded and that the board's showing was insufficient to sustain the omnibus demand for the complete medical records of the patients. The court concluded that: "If the trial court is to make the decision of reasonable cause other than as a rubber stamp the root facts upon which an inference of improper prescribing is based must be laid bare. Here we have some facts about the prescriptions and the conclusions of board personnel that they are suspicious but no mediating fact revealing why the conclusion is warranted. The board has made no evidentiary showing of how often physicians similarly situated to petitioners might prescribe these drugs. Alternatively, the board has made no showing of the likelihood that the prescriptions could have been properly issued, given what is known of the circumstances of issuance. Absent this information the trial court had no means by which to

gauge the likelihood that the records sought will reveal physician misconduct. Without this there can be no independent judicial assessment of good cause." Id. We hold that the trial court correctly granted the motion to quash because the defendant did not provide the trial court with probable cause for the desired medical records.

We conclude by noting that the public interest in health care, combined with confidence in the initial and ongoing checks on qualifications of psychiatrists is abundantly clear. Despite these strong interests, we have no basis to establish an exception to the psychiatrist-patient privilege that has been created by our legislature.

There is no error.

In this opinion the other judges concurred.