## JOSEPH FALCO *v.* INSTITUTE OF LIVING
## (AC 16979)

Landau, Schaller and Sullivan, Js.

Argued March 17—officially released October 6, 1998

*Donna R. Zito*, with whom, on the brief, was *Lois B. Tanzer*, for the appellant (defendant).

*Doreen J. Bonadies*, for the appellee (plaintiff).

*Opinion*

LANDAU, J. The defendant, the Institute of Living, appeals from the trial court's granting of the bill of discovery filed by the plaintiff, Joseph Falco, as to the name, last known address and social security number of one of the defendant's patients (John Doe). On appeal, the defendant claims that the trial court improperly ordered it to disclose John Doe's name, last known address and social security number (1) in violation of General Statutes § 52-146e,[1] (2) in violation of John Doe's constitutional right of privacy and (3) without affording John Doe notice or an opportunity to be heard. We affirm the judgment of the trial court.

The following facts and procedural history are relevant to the disposition of this appeal. On or about March 10, 1995, the plaintiff was admitted as an inpatient at the defendant psychiatric hospital in Hartford. Shortly thereafter, while attending a group meeting at the hospital, the plaintiff was allegedly attacked without provocation by John Doe.

Following the denial of the plaintiff's insurance claim, the plaintiff filed a bill of discovery against the defendant to obtain identifying information from the defendant that would enable the plaintiff to bring suit against

---

[1] General Statutes § 52-146e (a) provides: "All communications and records as defined in section 52-146d shall be confidential and shall be subject to the provisions of sections 52-146d to 52-146j, inclusive. Except as provided in sections 52-146f to 52-146i, inclusive, no person may disclose or transmit any communications and records or the substance or any part or any resume thereof which identify a patient to any person, corporation or governmental agency without the consent of the patient or his authorized representative."

John Doe. The trial court granted the plaintiff's bill of discovery and ordered the defendant to disclose John Doe's name, last known address and social security number.[2] This appeal followed.

I

The defendant first claims that the trial court improperly ordered the defendant to disclose data on John Doe in violation of § 52-146e.[3] We disagree.

In addressing this issue of first impression and determining whether the information sought by the plaintiff was protected by § 52-146e, we are initially guided by well defined principles of statutory interpretation. The court's "fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In seeking to discern that intent, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter." (Internal quotation marks omitted.) *Edelstein* v. *Dept. of Public Health & Addiction Services*, 240 Conn. 658, 664, 692 A.2d 803 (1997), quoting *State* v. *Metz*, 230 Conn. 400, 409, 645 A.2d 965 (1994). Moreover, principles of statutory construction require the court

[2] The plaintiff's original request contained in the bill of discovery requested the full name, last known address, social security number and date of birth, the medical and psychiatric records of John Doe while he was an inpatient at the hospital during March, 1995, and all incident reports made by the defendant regarding the incident that occurred on or about March 15, 1995. At oral argument on the bill of discovery, the plaintiff withdrew his request for the psychiatric records of the patient in question, conceding that it was privileged information, and his request for the incident reports, as that information could be obtained through discovery. The trial court did not grant the plaintiff's request for John Doe's date of birth.

[3] Although General Statutes §§ 52-146f through 52-146i enumerate exceptions to § 52-146e, the plaintiff's counsel agreed with the trial court at oral argument that none of the enumerated exceptions applies to this case.

to construe a statute in a manner that will not frustrate its intended purpose or lead to an absurd result. *Turner* v. *Turner*, 219 Conn. 703, 712, 595 A.2d 297 (1991). The court "must avoid a construction that fails to attain a rational and sensible result that bears directly on the purpose the legislature sought to achieve." Id., 713.

While individuals enjoy a " 'broad privilege in the confidentiality of their psychiatric communications and records' "; *Home Ins. Co.* v. *Aetna Life & Casualty Co.*, 235 Conn. 185, 195, 663 A.2d 1001 (1995), quoting *State* v. *D'Ambrosio*, 212 Conn. 50, 55, 561 A.2d 422 (1989), cert. denied, 493 U.S. 1063, 110 S. Ct. 880, 107 L. Ed. 2d 963 (1990); the purpose of the statutory privilege is to protect the therapeutic relationship that exists between the psychiatrist and the patient. *Bieluch* v. *Bieluch*, 190 Conn. 813, 819, 462 A.2d 1060 (1983). Specifically, the purpose of the psychiatrist-patient privilege is to " 'give the patient an incentive to make full disclosure to a physician in order to obtain effective treatment free from the embarrassment and invasion of privacy which could result from a doctor's testimony.' " *Home Ins. Co.* v. *Aetna Life & Casualty Co.*, supra, 195, quoting *State* v. *White*, 169 Conn. 223, 234–35, 363 A.2d 143, cert. denied, 423 U.S. 1025, 96 S. Ct. 469, 46 L. Ed. 2d 399 (1975). This statutory privilege ensures the patient that confidential communications that are necessary for effective treatment or diagnosis may be safely disclosed to a psychiatrist. *Bieluch* v. *Bieluch*, supra, 819. However, "[c]ommunications that bear no relationship to the purpose for which the privilege was enacted do not obtain shelter under the statute and are admissible subject to the normal rules of evidence." Id.

The legislature drafted exceptions to the general rule of nondisclosure of psychiatrist-patient communications.[4] These exceptions were drafted narrowly to protect the confidentiality of communications "unless

---

[4] See footnote 3.

important countervailing considerations require their disclosure." *Home Ins. Co.* v. *Aetna Life & Casualty Co.*, supra, 235 Conn. 195. Furthermore, the exceptions to the privilege "are not limited to those found in General Statutes § 52-146f." (Internal quotation marks omitted.) *Lieb* v. *Dept. of Health Services*, 14 Conn. App. 552, 559, 542 A.2d 741 (1988). Section 52-146e "defines the protected relationship carefully and at the same time recognizes the legitimate interest of society in intruding upon the relationship *in certain limited situations . . . .*" (Emphasis in original; internal quotation marks omitted.) *Home Ins. Co.* v. *Aetna Life & Casualty Co.*, supra, 195–96, quoting 9 H.R. Proc., Pt. 8, 1961 Sess., p. 3945, remarks of Representative Nicholas B. Eddy.

The defendant cites *Connecticut State Medical Society* v. *Commission on Hospitals & Health Care*, 223 Conn. 450, 612 A.2d 1217 (1992), in support of its argument that the information sought by the plaintiff identifies John Doe and, as such, should be protected from disclosure under § 52-146e. In that case, our Supreme Court withheld the disclosure of certain information under § 52-146e. The defendant's reliance on *Connecticut State Medical Society*, however, is misplaced. In that case, the court held that a four digit zip code suffix should be excluded from the submission of data to a state agency disclosed pursuant to agency regulations because it was possible to ascertain a patient's identity from that suffix and thus violated the confidentiality provisions of existing law, including § 52-146e. Id., 458–60. *Connecticut State Medical Society*, however, involved agency regulations that required the submission of patient data from "all of Connecticut's general hospitals" at the agency's discretion to enable the agency to develop and implement a payment system. Id., 453. That authorization to obtain information from all of Connecticut's general hospitals could inhibit an individual from seeking assistance from a hospital. In

this case, the plaintiff is seeking access to a single limited disclosure for the sole purpose of pursuing his constitutional right[5] to seek redress for his injuries.

The defendant also cites *Lieb* v. *Dept. of Health Services*, supra, 14 Conn. App. 552, in support of its argument. In *Lieb*, this court held that despite the strong interests involved in the case, the court had no basis to establish an exception to § 52-146e. Id., 561. In that case, the defendant sought access to *complete* patient records. We held that the defendant did not provide the trial court with good cause for access to the complete patient records. Id., 560–61. In the present case, the plaintiff requests access only to limited information, not John Doe's complete medical records. In addition, the plaintiff has provided a sufficient showing of good cause because he requires the information to institute a legal action against John Doe.[6]

Interpreting the statute to preclude the plaintiff from having access to the information when his sole purpose is to bring an action against John Doe would lead to an absurd result that was not intended by the legislature. The plaintiff's need for the information to institute a claim against John Doe creates a compelling countervailing interest that requires disclosure. Because the

---

[5] See part II A of this opinion for a discussion of the plaintiff's constitutional right.

[6] The defendant also relies on *State* v. *Esposito*, 192 Conn. 166, 471 A.2d 949 (1984). The defendant's reliance on *Esposito* is, however, also misplaced. *Esposito* involved the defendant's right to cross-examine a witness. While the *Esposito* court did indicate that the broad sweep of § 52-146e "covers not only disclosure to a defendant or his counsel, but also disclosure to a court even for the limited purpose of an in camera examination"; id., 178; this veil of secrecy is not absolute. Our Supreme Court noted that the trial court does have discretion in the material to be discovered if it is sought for impeachment purposes. Id., 179. The court discussed the procedure to be used to determine whether the claimed information is relevant for impeachment purposes. Id., 179–80. In the present case, the information is not only relevant, but necessary for the plaintiff to be able to file a claim against John Doe for the injuries that he alleges were sustained as a result of the assault.

exceptions are not limited to those found in § 52-146e and the compelling countervailing interest provides a basis on which to intrude upon the psychiatrist-patient relationship, we hold that under the narrow facts of this case, § 52-146e does not protect this type of information from disclosure. We therefore conclude that the trial court's order of disclosure did not violate § 52-146e.

## II

The defendant next claims that the trial court improperly ordered it to disclose the information in violation of John Doe's constitutional right of privacy. We disagree.

The defendant argues that John Doe has federal and state constitutional rights to privacy.[7] The defendant further argues that the trial court improperly concluded that if a constitutional right to privacy exists, it was outweighed by the plaintiff's economic interest to pursue a tort claim. Specifically, the defendant argues that the plaintiff would be reasonably restricted rather than denied access to the court.[8]

---

[7] The defendant also argues that it has a duty to treat patients in confidence. Specifically, the defendant argues that publicizing John Doe's identity will subject it to potential sanctions and civil liability. However, "[o]ur role is not to guess at possibilities, but to review claims based on a complete factual record developed by a trial court. . . . Without the necessary factual and legal conclusions furnished by the trial court, either on its own or in response to a proper motion for articulation, any decision made by us respecting this claim would be entirely speculative." (Internal quotation marks omitted.) *Lowe* v. *Lowe*, 47 Conn. App. 354, 362, 704 A.2d 236 (1997). "The court shall not be bound to consider a claim unless it was distinctly raised at the trial or arose subsequent to the trial. . . . It is the responsibility of the appellant to provide an adequate record for review as provided in Section 61-10 [formerly § 4007]." Practice Book § 60-5, formerly § 4061; see also *Lowe* v. *Lowe*, supra, 362–63. The claim presented here by the defendant was not raised at trial. As such, we decline to review the merits of this claim.

[8] The defendant also argues that the trial court ordered the disclosure of the information "knowing that no Connecticut court had ever before released psychiatric information without a patient's consent in response to a claimed constitutional challenge." The cases cited involve the defendant's right to confront a witness and attaining access to their psychiatric records in order to impeach a witness. See *State* v. *McMurray*, 217 Conn. 243, 258–59, 585

We begin with an analysis of John Doe's right to privacy as protected by our state constitution. "[A]ll rights derived by statute and the common law extant at the time of the adoption of article first, § 10, [of the Connecticut constitution of 1818][9] are incorporated in that provision by virtue of being established by law as rights the breach of which precipitates a recognized injury . . . ." *Gentile* v. *Altermatt*, 169 Conn. 267, 286, 363 A.2d 1 (1975), appeal dismissed, 423 U.S. 1041, 96 S. Ct. 763, 46 L. Ed. 2d 631 (1976). These rights are referred to as "constitutionally incorporated common-law right[s]." (Internal quotation marks omitted.) Id. Nearly every state recognizes the right to privacy in the context of the tort of invasion of privacy. *Perkins* v. *Freedom of Information Commission*, 228 Conn. 158, 170 n.14, 635 A.2d 783 (1993) (discussing development of right to privacy).[10] In Connecticut, the tort of invasion of privacy was first recognized in 1959. Id., 171–72 n.16, citing *Korn* v. *Rennison*, 21 Conn. Sup. 400, 156 A.2d 476 (1959). As such, the tort of invasion of privacy is not a constitutionally incorporated common-law right.

There appears to be no Connecticut case law that expressly states that there is a constitutional right to

A.2d 677 (1991); *State* v. *Bruno*, 197 Conn. 326, 331–32, 497 A.2d 758 (1985), cert. denied, 475 U.S. 1119, 106 S. Ct. 1635, 90 L. Ed. 2d 181 (1986); *In re Christopher G.*, 20 Conn. App. 101, 112, 564 A.2d 619 (1989), cert. denied, 213 Conn. 814, 569 A.2d 549 (1990). The defendant's reliance on the authorities cited in support of this assertion is misplaced. In those cases, the court, in its discretion, determined that the information requested was not relevant to the impeachment of the witness.

[9] Article first, § 10, of the constitution of Connecticut provides that "[a]ll courts shall be open, and every person, for an injury done to him in his person, property or reputation, shall have remedy by due course of law, and right and justice administered without sale, denial or delay." We note that an identical provision was contained in the 1818 constitution of Connecticut in article first, § 12.

[10] The *Perkins* court noted that the "definition [of the right to privacy in Black's Law Dictionary (6th Ed. 1990)] clearly implicates the tort of invasion of privacy stated in the Restatement. 3 Restatement (Second), Torts § 652A (2) (1977)." *Perkins* v. *Freedom of Information Commission*, supra, 228 Conn. 171 n.15.

privacy in terms of a psychiatrist-patient relationship. Furthermore, in Connecticut, there is no common-law physician-patient privilege. *Lieb* v. *Dept. of Health Services*, supra, 14 Conn. App. 557, citing *Zeiner* v. *Zeiner*, 120 Conn. 161, 167, 179 A. 644 (1935). Under the narrow facts of this case, we conclude that John Doe does not possess a right to privacy protected by the state constitution.

We now turn to John Doe's right to privacy as protected by the federal constitution.[11] "While there is no 'right of privacy' found in any specific guarantee of the Constitution, the Court has recognized that 'zones of privacy' may be created by more specific constitutional guarantees and thereby impose limits upon government power. . . . [Aside from the unreasonable search and seizure privacy cases, the] other 'right of privacy' cases, while defying categorical description, deal generally with substantive aspects of the Fourteenth Amendment. In [*Roe* v. *Wade*, 410 U.S. 113, 93 S. Ct. 705, 35 L. Ed. 2d 147 (1973)], the Court pointed out that the personal rights found in this guarantee of personal privacy must be limited to those which are 'fundamental' or 'implicit in the concept of ordered liberty' as described in *Palko* v. *Connecticut*, 302 U.S. 319, 325 [58 S. Ct. 149, 82 L. Ed. 288] (1937). The activities detailed as being within this definition . . . [include] matters relating to marriage, procreation, contraception, family relationships, and child rearing and education. In these areas it has been held that there are limitations on the States' power to substantively regulate conduct." (Citations omitted.) *Paul* v. *Davis*, 424 U.S. 693, 712–13, 96 S. Ct. 1155, 47 L. Ed. 2d 405 (1976). "[T]he Supreme Court has

---

[11] The United States Supreme Court has expressed the opinion that the right of privacy is founded in the fourteenth amendment concept of personal liberty. See *Whalen* v. *Roe*, 429 U.S. 589, 598–99 n.23, 97 S. Ct. 869, 51 L. Ed. 2d 64 (1977), citing *Roe* v. *Wade*, 410 U.S. 113, 152–53, 93 S. Ct. 705, 35 L. Ed. 2d 147 (1973).

extended their protection only to the most basic personal decisions. . . . Nor has the Supreme Court been quick to expand these rights to new fields." (Citation omitted.) *East Hartford Education Assn.* v. *Board of Education*, 562 F.2d 838, 861 (2d Cir. 1977).

Although in *Whalen* v. *Roe*, 429 U.S. 589, 97 S. Ct. 869, 51 L. Ed. 2d 64 (1977), the Supreme Court implicitly addressed the issue of whether certain medical information was protected by the right to privacy, there is no federal authority that expressly indicates that the psychiatrist-patient privilege is protected by the right to privacy. In *Whalen*, the Supreme Court failed to state explicitly that information in physician-patient records is within the zone of privacy. The *Whalen* court upheld a New York statutory scheme that required recording in a centralized computer file the names and addresses of all persons who had obtained with physicians' prescriptions certain drugs for which there was also an illegal market. Id., 591. In response to a concern that certain drugs had legitimate and illegitimate uses, and that such drugs were being diverted into the unlawful market, the New York legislature created a special commission. Id. The commission drafted the statute in response to a finding that there were defects in the administration of drug prescriptions. Id., 592.

The *Whalen* court never addressed the issue of whether the right to privacy protected the information required by the statute. Instead, the court proceeded to balance the interests in upholding the statute, relying on the state's "vital interest in controlling the distribution of dangerous drugs"; id., 598; and the insufficiency of any showing of an increased threat of public disclosure of the stored information. Id., 600–601. *Whalen* did not specifically address the issue of whether the right to privacy protects the type of information that the plaintiff seeks and is therefore not persuasive that John

Doe has a constitutional right to privacy to protect that information.

We now address whether the plaintiff possesses a constitutionally incorporated common-law right to sue in tort for assault and battery. When article first, § 10, of the constitution of Connecticut was adopted in 1818, the common-law rights that existed were incorporated into that provision. See *Gentile* v. *Altermatt*, supra, 169 Conn. 286. An "action of trespass with force and arms, [is] commonly called Assault and Battery . . . ." 2 Z. Swift, A System of the Laws of the State of Connecticut (1796), p. 29. The action for the plaintiff's assault and battery claim can be linked to the preconstitutional common-law action of trespass and, as such, we consider it to be a constitutionally incorporated common-law right. See *Daily* v. *New Britain Machine Co.*, 200 Conn. 562, 585, 512 A.2d 893 (1986) (presenting similar argument regarding defective product injuries and their link to preconstitutional common-law action of trespass on the case).[12]

We conclude that there is no state or federal constitutional right of privacy under the narrow facts of this case that protects the type of information that the plaintiff is attempting to secure, and that the plaintiff possesses a state constitutionally incorporated common-law right to pursue a cause of action for assault and battery. As such, we conclude that the trial court correctly ordered the defendant to disclose the information on John Doe to the plaintiff.

[12] A common-law trespass provides a remedy for "all forcible, direct and immediate injuries, whether to a person or to property—or in other words, for the kind of conduct likely to lead to a breach of the peace by provoking immediate retaliation." (Internal quotation marks omitted.) *Ford* v. *Blue Cross & Blue Shield of Connecticut, Inc.*, 216 Conn. 40, 52 n.2, 578 A.2d 1054 (1990). Trespass on the case provides a remedy for "obviously wrongful conduct resulting in injuries which were not forcible or not direct." (Internal quotation marks omitted.) Id.

## III

The defendant finally claims that the trial court improperly ordered the disclosure of the data without affording John Doe notice and an opportunity to be heard in violation of his state and federal rights to due process. We disagree.

As we concluded previously, the information sought by the plaintiff is not protected by § 52-146e. Furthermore, John Doe does not have a state or federal constitutional right of privacy that protects the type of information that the plaintiff seeks in this case. In claiming that John Doe has not been afforded notice and opportunity, the defendant relies on *Sassone* v. *Lepore*, 226 Conn. 773, 777, 629 A.2d 357 (1993). In *Sassone*, the court stated that "[d]epriving a party of a *statutory right* without an antecedent hearing that addresses the validity of the applicable statute violates the principles of due process . . . ." (Citation omitted; emphasis added.) Id. Because the information sought here is not protected by either a constitutional right or a statutory right,[13] we conclude that the trial court did not violate John Doe's due process rights.

The order granting the bill of discovery is affirmed.

In this opinion SULLIVAN, J., concurred.

SCHALLER, J., dissenting. The majority upholds the trial court's order granting the plaintiff's bill of discovery. The defendant is thereby compelled to disclose the identity of one of its patients, contrary to the prohibition

---

[13] The defendant's reliance on the additional authority cited in support of this claim is also misplaced. See *Secretary of State of Maryland* v. *Joseph H. Munson Co.*, 467 U.S. 947, 954, 104 S. Ct. 2839, 81 L. Ed. 2d 786 (1984) (discussing doctrine of standing); *Connecticut State Medical Society* v. *Commission on Hospitals & Health Care*, supra, 223 Conn. 460 (discussing federal rule of jus tertii); *Rockwell* v. *Bradshaw*, 67 Conn. 8, 14, 34 A. 758 (1895) (involving action to determine construction of will and discussing what would have been claimed had trustees been made parties to action).

of General Statutes § 52-146e, for the convenience of the plaintiff, who alleges that the information is necessary to investigate the patient's culpability. Because I conclude that the record is inadequate to support a claim that the plaintiff's right of redress is implicated in this particular case and, therefore, fails to provide a basis for a judicial exception to the broad privilege of § 52-146e, I respectfully dissent.

My disagreement has its foundation in the principal flaw in the trial court's analysis. That flaw is the equation, without explanation, of the plaintiff's belated assertion of the need for convenient and expedient discovery with the constitutionally incorporated common-law right to redress. There is no basis in this case for a judicially created exception to the broad statutory privilege of § 52-146e.

I take no issue with the majority's formulation of the constitutionally incorporated common-law right to redress. That right is fundamental to our law; the method of analysis of a claim of constitutional violation by statutory enactment is well known. See *Sanzone* v. *Board of Police Commissioners*, 219 Conn. 179, 196–97, 592 A.2d 912 (1991); *Daily* v. *New Britain Machine Co.*, 200 Conn. 562, 575–76, 512 A.2d 893 (1986); *Gentile* v. *Altermatt*, 169 Conn. 267, 284, 363 A.2d 1 (1975), appeal dismissed, 423 U.S. 1041, 96 S. Ct. 763, 46 L. Ed. 2d 631 (1976); *State* v. *Perkins*, 88 Conn. 360, 368, 91 A. 265 (1914).[1]

The inadequacy of the factual predicate produced by the plaintiff to establish that the right to redress attaches in this case is central to a resolution of the

[1] It is not necessary for my purposes to reach the issue of whether a federal or state right of privacy exists to protect the patient. Significantly, my approach does not require the creation of a questionable exception to the broad dictates of § 52-146e based on judicial fiat. I assume, without deciding, for the purposes of this discussion, that a separate bill of discovery proceeding was an appropriate method of obtaining the information.

issues. The facts and procedural history are illuminating. The incident of which the plaintiff complains allegedly occurred at the Institute of Living on March 15, 1995. The plaintiff presented a claim to the Institute of Living at some unspecified time between that date and December 18, 1996, at which time the claim was denied. The plaintiff has provided no evidence as to whether he took any action whatsoever during that twenty-one month period to investigate the incident or the identity of the participants. The plaintiff then waited more than two months before commencing suit against the Institute of Living and the patient, who was identified in the complaint not only as John Doe but also by what the plaintiff believed to be the patient's real name. The plaintiff failed to provide any evidence as to how and when he learned the name, and what else he knew about the patient.

In the meantime, on January 7, 1997, nearly twenty-two months after the incident, the plaintiff brought a separate bill of discovery proceeding. The bill, which did not disclose that the plaintiff believed he knew the real name of the patient, alleged, inter alia, that "[t]he plaintiff needs to know the full name, last known address, social security number and date of birth of John Doe." The plaintiff also sought "the medical and psychiatric records of John Doe while an inpatient at the defendant hospital during March, 1995." The reason for the request, the plaintiff asserted, was: "This information is necessary to conduct a good faith investigation as to the culpability of John Doe and the defendant hospital in causing the plaintiff's injuries." The plaintiff further alleged that he needed the information immediately, since he had left himself only two months in which to investigate and proceed against the patient before the running of the statute of limitations.

The trial court provided a hearing within twenty days, on January 27, 1997, and then continued the case for

additional briefing and hearing, until March 10, 1997. At the first hearing, the plaintiff withdrew his request for the patient's psychiatric records, with counsel stating: "It is my contention that that information is privileged." At neither hearing did the plaintiff provide evidence as to why the abrogation of the statutory privilege was necessary to secure the information. There were no representations of counsel as to what, if any, efforts were made to investigate the claim.

The trial court was understandably troubled by the implications of its decision. It specifically acknowledged the breadth of the psychiatric shield law as applied to the facts of this case and the absence of any statutory exceptions for this matter. The issue of representation of the patient's interest was disposed of on the basis that the court was not certain that the patient could be located at all or, in any event, before the statute of limitations was to run.[2] The trial court offered no explanation as to why the right to redress was invoked by the plaintiff's late claim that a bill of discovery was now the most convenient method of securing information to further its investigation of the liability of the defendant and the patient.

The plaintiff asserted that "[t]here are no other adequate means in securing the information *conveniently, effectively and completely.*" (Emphasis added.) The plaintiff failed to submit any evidence as to why no other means existed, such as investigation based on

---

[2] When counsel for the Institute of Living requested that the trial court provide notice to the patient or at least have an attorney appointed to represent him, that request was ignored. The majority states that no representation is necessary because this court has upheld the trial court's decision that the patient has no statutory right to protection under *Sassone* v. *Lepore*, 226 Conn. 773, 629 A.2d 357 (1993). I disagree. Representation is necessary under *Sassone* precisely because the patient's statutory right was at issue in the trial court. The obligation to see that the patient was represented was urgent before, not after, the determination of whether the patient had a right.

leads derived from the plaintiff's knowledge concerning the patient's real name. The essence of the plaintiff's claim is that the bill of discovery is *preferable* because it is *convenient, effective and complete*. Such a representation falls far short of a representation sufficient to override the statutory privilege. To override the privilege under circumstances such as those presented in this case, it would be reasonable to require, at least, that the plaintiff establish a factual predicate that *no other adequate means of securing the information exists*. See generally *Kelley* v. *Bonney*, 221 Conn. 549, 573, 606 A.2d 693 (1992); *State* v. *Williams*, 30 Conn. App. 654, 658, 621 A.2d 1365 (1993). To allow the privilege to be overcome based on mere convenience or expediency renders the privilege superfluous. It can hardly be seriously contended that failing to provide the most *convenient* way to obtain information about a putative defendant deprives a plaintiff of his constitutionally incorporated right to maintain an action. *Sanborn* v. *Greenwald*, 39 Conn. App. 289, 304, 664 A.2d 803, cert. denied, 235 Conn. 925, 666 A.2d 1186 (1995). The right of redress is a vital, protected right that would, *under appropriate circumstances*, provide a basis for a judicial exception to the statutory privilege. The right of redress, however, should not be allowed to be trivialized by virtue of the plaintiff's manner of employing it in this case.

Our Supreme Court stated in *Gentile* v. *Altermatt*, supra, 169 Conn. 284, that General Statutes § 38-323, the statute being challenged in that case, "does not restrict the right to redress for an actionable injury but, rather, redefines the injury or the class of persons injured to which this constitutional right of redress attaches. What is of constitutional dimensions, then, is the right of redress and not the nature of the particular injury for which redress is sought. Stated differently, the right to redress in the courts must remain inviolate

but it does not attach unless one suffers a recognized injury."

Section 52-146e neither alters nor limits the nature of the cause of action that is constitutionally incorporated. Neither does it remove the particular injury from the realm of protection. Even in the case of limitations that directly affect or limit the particular action, we have determined that "[r]easonable conditions on a cause of action do not amount to a violation of the constitution. . . . A strict and inflexible interpretation of article first, § 10, could affect the legislature's ability to pass, enact and repeal laws." (Citation omitted.) *Sanborn* v. *Greenwald*, supra, 39 Conn. App. 304. The court in *Sanborn* concluded that General Statutes § 52-577 "restricts the right only to the extent that it restricts the time for bringing the action. By analogy, if the § 13a-149 bar of an action against a municipality for injuries arising out of highway defects if notice is not given within ninety days, an action that existed at common law . . . can survive an attack on its constitutionality, we conclude that § 52-577 can also survive such an attack." (Citation omitted.) *Sanborn* v. *Greenwald*, supra, 305.

The statute in question restricts in one respect the gathering of information that can lead to further investigation. In that capacity, it does not differ from the other statutory and common-law privileges.[3] The plaintiff provided neither evidence nor authority to support the proposition that the right to redress was implicated or infringed in this case; neither the trial court nor the majority provided any analysis of why that principle commands the bypassing of § 52-146e in this case.

---

[3] It should be noted that there are more than forty different statutory privileges in Connecticut. In addition, there are numerous common-law privileges, including the spousal, attorney-client and doctor-patient privileges, recognized under Connecticut law that restrict the dissemination and, therefore, the gathering of information.

The trial court viewed this case as involving a clash of constitutional and statutory rights and privileges. While serious questions concerning important rights and privileges are suggested by the issues in this case, we are not engaged in resolving the conflict among them in the abstract. At the core of the matter, the factual record produced by the plaintiff fails to support his general claim that he is deprived of his right to redress. Under the circumstances, the extraordinary relief sought by the plaintiff is not appropriate.

It is important to note that under the statute, the patient is not protected from liability nor from proper means of discovery. The patient, however, should be protected from the disclosure of his identity and confidential communications with his psychiatrist, except as required by a valid exception to the statute. Accordingly, I would reverse the judgment of the trial court.

For the foregoing reasons, I respectfully dissent.