JEANNE F. BIELUCH *v.* WILLIAM C. BIELUCH, JR.
(11140)

PETERS, HEALEY, PARSKEY, GRILLO and F. HENNESSY, Js.

Argued June 1—decision released August 2, 1983

*Ernest C. LaFollette,* for the appellant (defendant).

*C. Ian McLachlan,* with whom, on the brief, was *Gaetano Ferro,* for the appellee (plaintiff).

PETERS, J. The principal issue in this case is the extent to which the psychiatrist-patient privilege bars the receipt of psychiatric evidence in a dispute over child custody. The plaintiff, Jeanne F. Bieluch, brought an action against the defendant, William C. Bieluch, Jr., seeking dissolution of their marriage, custody of their three minor children, and various property and financial orders. Although the defendant nominally denied the breakdown of the marriage, he affirmatively contested only the issues of custody and of assignments of property. The trial court, after a full hearing, dissolved the parties' marriage, and awarded to the plaintiff much of the relief she had sought: custody of the children, unallocated alimony and support, and a transfer of the defendant's interest in the marital home. The court awarded the defendant visitation rights and ordered him to assume sole responsibility for certain listed family liabilities. The defendant has appealed.

Although the defendant has briefed four assignments of error, his most serious claim is that the trial court erred in receiving evidence, consisting of oral testimony and a written report, from Richard Robins, a psychiatrist. Robins testified that he had been engaged to do a custody study, first by the defendant, and thereafter by a court order entered upon the stipulation of the parties. The defendant himself paid Robins until June 16, 1981, the date of the court order, when the

plaintiff assumed responsibility for the payment of the psychiatric fees. Robins met with the children, according to his testimony, for five sessions, and with the plaintiff for three sessions, once alone. As a result of a disagreement between Robins and the defendant, their contacts were limited to several telephone calls and informal encounters when the defendant brought the children to Robins' office. On the basis of this testimony, the trial court concluded that the defendant was entitled to claim the psychiatrist-patient privilege[1] for communications between the defendant and Robins predating June 17, 1981. The court ruled, however, that Robins could testify about all of the defendant's conduct and about the defendant's communications after the cut-off date, and held admissible Robins' report once pre-June 17, 1981 communications were excised.

The defendant claims that, once the court recognized the psychiatrist-patient privilege with respect to any part of his relationship with Robins, it was error to permit Robins either to testify about, or to submit a report in any way derived from, contacts between the defendant and Robins. The defendant decries as unsupportable the trial court's distinction, for pre-June 17, 1981 events, between testimony describing communications, which was excluded, and testimony describing conduct, which was held admissible. Similarly, the defendant maintains that adverse comments in the admitted report could not be separated from the privileged communications which the court had ordered stricken. This

[1] "[General Statutes] Sec. 52-146e. DISCLOSURE OF COMMUNICATIONS. (a) All communications and records as defined in section 52-146d shall be confidential and shall be subject to the provisions of sections 52-146d to 52-146j, inclusive. Except as provided in sections 52-146f to 52-146i, inclusive, no person may disclose or transmit any communications and records or the substance or any part or any resume thereof which identify a patient to any person, corporation or governmental agency without the consent of the patient or his authorized representative."

is an argument that would have considerable appeal if its foundation were properly established. We need not, however, resolve the question because we find no basis for the defendant's assertion of any psychiatrist-patient privilege whatsoever.

We are hampered in our review of this question by an inadequate record. The defendant never sought to have the trial court articulate the basis upon which the court recognized his claim of privilege. The defendant, acting as his own counsel at the trial, represented to the court that he had employed Robins to do certain work, stating, "I hired him to talk with the children. . . . I was [I] believe, acting as an authorized representative on behalf of my children at that point in time. I was their parent and guardian." The defendant concededly paid Robins for his work prior to June 17. After June 17, in accordance with the court's order, upon the stipulation of the parties, the plaintiff assumed the responsibility for the remaining charges incurred "for an evaluation of the parties." The defendant had no private professional consultation with Robins at any time, the defendant having never met with Robins in the latter's office. The defendant relied on this record to assert the psychiatrist-patient privilege to exclude communications between himself and Robins.

It is our conclusion that the defendant has failed to supply an evidentiary foundation for his claim that his initial engagement of Robins constituted the establishment of a psychiatrist-patient relationship as that term is defined by our statute. Without such a relationship, the defendant had no privilege to exclude any part of Robins' testimony or report. Although the trial court, on this analysis, should not have excluded even the pre-

June 17 communications, that ruling cannot make it reversible error to have admitted other evidence which was equally unprivileged.[2]

The governing statute; General Statutes § 52-146d (6); defines the term "patient" as "a person who communicates with or is treated by a psychiatrist *in diagnosis or treatment.*" (Emphasis added.) The present record contains no evidence of a psychiatrist-patient relationship in which Robins saw the defendant for the purpose of the defendant's diagnosis or treatment. Robins himself testified to the absence of a psychiatrist-patient relationship. The defendant, in asserting his privilege, never claimed that Robins had been asked to treat or diagnose the defendant, but rather claimed that Robins had been hired to evaluate the children. The transcript, therefore, does not bear out the defendant's assertion that Robins had been retained "for pro-

---

[2] Since the defendant has failed to demonstrate that his communications were otherwise privileged, we do not find it necessary to consider the argument, advanced by the plaintiff, that the defendant's communications made after the June 16, 1981 court order were subject to disclosure pursuant to General Statutes § 52-146f (4). That subsection provides:

"[General Statutes] Sec. 52-146f. CONSENT NOT REQUIRED FOR DISCLOSURE, WHEN. Consent of the patient shall not be required for the disclosure or transmission of communications or records of the patient in the following situations as specifically limited . . .

"(4) Communications made to or records made by a psychiatrist in the course of a psychiatric examination ordered by a court or made in connection with the application for the appointment of a conservator by the probate court for good cause shown may be disclosed at judicial or administrative proceedings in which the patient is a party, or in which the question of his incompetence because of mental illness is an issue, or in appropriate pretrial proceedings, *provided the court finds that the patient has been informed before making the communications that any communications will not be confidential* and provided the communications shall be admissible only on issues involving the patient's mental condition." (Emphasis added.)

We would note, however, that the court did not make the finding, prerequisite to operation of the subsection, "that the patient has been informed before making the communications that any communications will not be confidential . . . ."

fessional advice in relation to the matter of custody" if that assertion is intended to imply that a professional relationship for treatment or diagnosis of the defendant himself was thereby established.[3]

If, in the alternative, we are to infer that the defendant was asserting the privilege, not on his own behalf but on behalf of his children, we encounter similar evidentiary obstacles. It is true that the statute extends the privilege to encompass "communications . . . between a member of the patient's family and a psychiatrist."[4] Even this extended privilege must, however, relate to the objectives of diagnosis or treatment. The present record contains neither a claim nor any evidence that Robins was engaged to see the children for the purpose of diagnosis or treatment. Therefore this record does not require us to determine on what basis a claim of privilege should be resolved in a custody dispute where one parent asserts the privilege and the other, by offering the contested communications into evidence, intends to waive the privilege. The record does, however, serve to underscore how important it is that a trial court exercise its discretion to appoint independent counsel to represent the interests of minor children whenever the issue of child custody is seriously contested. *Yontef* v. *Yontef,* 185 Conn. 275, 284, 440 A.2d 899 (1981).

---

[3] The limited nature of the defendant's relationship with Robins is underscored by testimony given at the trial by Elliott Zelevansky, a clinical psychologist with whom the defendant was then in therapy. The defendant called Zelevansky as his own witness.

[4] General Statutes § 52-146d (2) provides: "(2) 'Communications and records' means all oral and written communications and records thereof relating to diagnosis or treatment of a patient's mental condition between the patient and a psychiatrist, or between a member of the patient's family and a psychiatrist, or between any of such persons and a person participating under the supervision of a psychiatrist in the accomplishment of the objectives of diagnosis and treatment, wherever made, including communications and records which occur in or are prepared at a mental health facility."

In his reply brief, the defendant does not dispute the lack of an evidentiary foundation relating to treatment or diagnosis, but argues instead that the statute makes confidential any communication of any kind between any person and a psychiatrist. The defendant urges us to construe the statute so that the phrase "in diagnosis or treatment" modifies only the words "is treated by" and not the words "communicates with." The defendant offers no basis for this construction, and we reject it. The purpose of the statutory privilege is to protect a therapeutic relationship. The statute provides a privilege for confidential communications so that a patient may safely disclose to his therapist personal information that is necessary for effective treatment or diagnosis. *State* v. *White,* 169 Conn. 223, 234–35, 363 A.2d 143, cert. denied, 423 U.S. 1025, 96 S. Ct. 469, 46 L. Ed. 2d 399 (1975). Communications that bear no relationship to the purpose for which the privilege was enacted do not obtain shelter under the statute and are admissible subject to the normal rules of evidence.

In concluding that the defendant has failed to establish the psychiatrist-patient relationship that is required before he may assert a privilege to exclude allegedly confidential communications, we do not preclude the possibility that, under other circumstances, communications elicited in a custody study may be privileged. A psychiatrist engaged in family therapy who is subsequently consulted for the purpose of making a recommendation in a custody dispute may well have received communications related to treatment or diagnosis. The appropriate fact-finding can await another day. For similar reasons, we need not decide whether, if the appropriate psychiatrist-patient relationship exists, the privilege is to be deemed waived by a parent seeking custody because by introducing "his mental condition as an element of his claim or defense"

he has brought into play the disclosure provisions of General Statutes § 52-146f (5).[5] For this appeal, we hold only that the present defendant was not entitled to suppress any part of the Robins testimony or report.

The defendant's remaining assignments of error challenge various conclusions reached by the trial court in adjudicating the rights of the parties. Although we have examined each of these claims carefully, we feel that nothing would be gained by elaborating at length upon their merits, which we find unpersuasive. *State* v. *Maturo,* 188 Conn. 591, 600, 452 A.2d 642 (1982).

The defendant argues that the trial court was in error in finding that he was at fault in causing his marriage to break down irretrievably. The defendant takes issue with the court's characterization of his conduct, although he does not dispute the testimony about what transpired, either when the parties originally separated or when they failed to reconcile. The evidence was sufficient for the court to find him at fault and to take account of his conduct in the award of alimony and support and in the division of the parties' assets.

---

[5] Under General Statutes § 52-146f (5), the psychiatric privilege may be overridden when "the court or judge finds that it is more important to the interests of justice that the communications be disclosed than that the relationship between patient and psychiatrist be protected." Construing similar language in the context of custody disputes, courts in other jurisdictions have disagreed about the extent to which concern for the best interest of children requires subordination of the psychiatric privilege. Compare *Critchlow* v. *Critchlow,* 347 So. 2d 453, 454 (Fla. App. 1977); *Atwood* v. *Atwood,* 550 S.W.2d 465, 467 (Ky. 1976); *D.* v. *D.,* 108 N.J. Super. 149, 154, 260 A.2d 255 (1969); all of which require disclosure, with *Simek* v. *Superior Court,* 117 Cal. App. 3d 169, 176–77, 172 Cal. Rptr. 564 (1981); *Roper* v. *Roper,* 336 So. 2d 654, 656 (Fla. App. 1976); *Barker.*v. *Barker,* 92 Idaho 204, 206, 440 P.2d 137 (1968); *Husgen* v. *Stussie,* 617 S.W.2d 414, 417 (Mo. App. 1981); *Perry* v. *Fiumano,* 61 App. Div. 2d 512, 519, 403 N.Y.S.2d 382 (1978); *Stone* v. *Stone,* 19 Utah 2d 378, 381, 431 P.2d 802 (1967); upholding the privilege. See also 8 Wigmore, Evidence (McNaughton Rev. 1961) § 2285, p. 527.

The defendant asserts that the court erred in its property award because it traced the plaintiff's contributions toward the acquisition and upkeep of the family home without considering that the plaintiff's contributions should be presumed to have constituted a gift to the defendant. We are not persuaded that the court overlooked the fact that the marital homes were formally acquired as joint property. Under the governing statute, General Statutes § 46b-81, the court was entitled to take account of the plaintiff's undisputed cash contributions. Its failure expressly to spell out the facts relevant to statutory factors, such as the parties' relative needs and access to income, does not demonstrate that the court failed to consider all the relevant statutory criteria.

In order to prevail on his claim that the trial court erred in the totality of its financial awards, the defendant would have to prove that the trial court's orders constituted an abuse of discretion. The trial court, in all of the circumstances, could reasonably have concluded that it was appropriate to award virtually all of the marital assets to the plaintiff and to require the defendant to assume virtually all of the marital obligations. In light especially of the parties' disparate needs, contributions, and earning capacity, we find no abuse of discretion.

The defendant's final claim of error concerns the terms of the judgment file. The parties disagreed whether the trial court's original order, requiring the defendant to hold the plaintiff harmless with regard to certain debts, included an obligation to pay her attorney's fees incurred in conjunction with her defense against such debts. The trial court signed a judgment file incorporating an obligation encompassing attorney's fees, without first affording the defendant a hearing on his motion that such an obligation was

unwarranted. The due process rights that the defendant's motion may have raised were sufficiently protected by a hearing subsequently held, at which the trial court expressed its complete willingness to vacate the judgment if it could be persuaded of its error. No appeal has been taken from the trial court's refusal to vacate or amend the judgment.

There is no error.

In this opinion the other judges concurred.