**Susan H. BOND (Now Robinson), Appellant,**

v.

**Orin Burhl BOND, Appellee.**

**No. 93–CA–0192–MR.**

Court of Appeals of Kentucky.

July 29, 1994.

As Modified on Grant of Rehearing Dec. 2, 1994.

Delores H. Pregliasco, Marcia Ford Seiler, Landrum & Shouse, Louisville, for appellant.

Irvin D. Foley, Rubin Hays & Foley, Louisville, for appellee.

Before HOWERTON, JOHNSTONE, and WILHOIT, JJ.

*OPINION REVERSING*

HOWERTON, Judge.

Susan Robinson commenced an action to modify custody of the parties' two minor children. From an adverse ruling dismissing her action, Susan brings this appeal citing several points of error. We find reversible error regarding two specific issues and, therefore, reverse the trial court's decision and remand this matter for further proceedings consistent with this opinion.

Susan Robinson and Burhl Bond have been divorced now for approximately seven years. At the time of the divorce, Burhl was awarded sole custody of the parties' two minor children, Jennifer and James, subject to Susan's visitation rights. It appears that Susan has exercised her visitation rights with regularity.

Susan felt compelled to seek a modification of the children's custody due to emotional problems she perceived to be developing with the children. According to Susan, James had developed a severe problem of soiling his pants, and Jennifer had reached the preadolescent age where she needed more contact with her mother to help her cope with the natural physical and emotional changes evolving through adolescence.

This matter was tried before the Jefferson Circuit Court and dismissed for Susan's failure to sustain her statutory burden of proof found at KRS 403.340. Susan raises the following issues on appeal:

(1) The court erred in refusing to interview the children;

(2) The court erred in reading and considering the medical depositions;

(3) The court erred in not alternatively considering joint custody;

(4) The court erred in not allowing questions regarding the sexual relationship between Burhl and his girlfriend;

(5) The court erred in not requiring mediation prior to litigation;

(6) The court erred in allowing the court-appointed evaluator (social worker) to testify without first filing a written report with the court pursuant to KRS 403.300; and

(7) The court erred in refusing testimony of the children's emotional, mental, and physical well-being by allowing Burhl to claim the psychotherapist-patient privilege on behalf of James.

We find Susan's challenge on the last two issues to be meritorious, and it is upon these two issues that we reverse the trial court's decision. We find no reversible abuse of the trial judge's discretion concerning the other issues.

## I.

■ Dr. Anna Bergman, the psychologist who evaluated both children and who was treating James at the time, was called by Susan to testify concerning the children's emotional, mental, and physical well-being. During Dr. Bergman's testimony, Burhl, as James's custodial parent, claimed the psychotherapist-patient privilege on behalf of James to prevent Dr. Bergman's disclosure of communications made by James to her. Susan argues that the trial court erred when it allowed the privilege claimed by Burhl to stand and when it prevented Dr. Bergman from testifying about the children's emotional, mental, and physical well-being. We agree.

We have considered this case with deep concern about the apparent oversight of the children's rights in this case. This dispute, however, is no different from other custody disputes where the child becomes the pawn— the prize after which two people seek—no matter what the effect is on the child. Society expects that a mother and father are the ones most likely to be concerned with the best interests and well-being of their child and, under normal circumstances, this is true. However, when custody of the child becomes the subject of a bitter contest between mother and father, the personal interests of the contestants in almost all cases obliterate that which is in the best interests of the child. It is at this point that it can be said the interests of both parents become potentially, if not actually, adverse to the child's interests. Consequently, we see no logic in permitting one or both of the parents in a custody battle to assert the psychotherapist-patient privilege on behalf of their child, especially when the child's mental, emotional, and/or physical well-being is the key issue in the custody dispute. Oftentimes one parent, at least, will have a significant motivation to prevent full disclosure, to the detriment of the child.

We are not saying that either Susan or Burhl has damaged their children and seeks to cover it up by precluding Dr. Bergman's testimony. What we are saying is that, at least insofar as James is concerned, there was ample proof that he is suffering some mental/emotional disorder. Discovery of the origin of the problem, however, has been thwarted or frustrated by Burhl's claim of privilege on behalf of James. In his brief, Burhl asserts that in all the written reports prepared by the psychologist, he has been found to be nothing short of a model, responsible and caring parent. If this is truly the case, then what would he have to hide by asserting the privilege on James's behalf?

If there is something amiss in James's relationship with his father (or with his mother) which is causing him emotional harm, no one with authority to remedy the situation will know under the present circumstances of this case. In our opinion, parents involved in a custody dispute should not be allowed to assert any privilege on behalf of their child simply because their interests are divergent from the child's interests.

Other jurisdictions so holding cite as reasons therefor (1) the conflicting interests of parent and child, and (2) the uncertainty of a parent's ability to consider the child's best interests given the nature of the proceeding. *See In re Adoption of Diane,* 400 Mass. 196, 508 N.E.2d 837 (1987). In *Carney v. Carney,* 525 So.2d 357 (La.App.1988), the Louisiana appellate court, construing a statute which authorized the court to consider the mental and physical health of the parties (among other factors) in custody disputes, found that such provision operated as a legislative exception to the physician-patient privilege. In *Carney,* a parent attempted to invoke the privilege on the child's behalf to prevent the testimony of the child's treating psychologist. Our KRS 403.340(3)(b) requires that the "mental and physical health of all individuals involved" be considered by our trial courts in custody modification matters.

In *Atwood v. Atwood,* Ky., 550 S.W.2d 465 (1976), our Supreme Court construed KRS 403.340 (the custody modification statute) in light of KRS 421.215 (repealed and superseded by KRE 507) much the same way as did the *Carney* court. At issue in *Atwood* was whether a *mother's* mental condition could be examined in a custody proceeding via depositions of her former treating psychiatrists. The mother attempted to claim the privilege

on her *own* behalf, but the Court found as follows:

> In every ... proceeding for the modification of a custody decree (KRS 403.340), the mental and physical health of not only the parents but of the child is of great concern and importance to the court. ... Of major importance is the mental and physical health of all of the parties and whether the child is in an environment likely to endanger his physical, mental, moral or emotional health. [Cite omitted.]
>
> . . . .
>
> The psychiatrist-patient privilege statute was adopted in 1966 and the statutes dealing with award of custody and its modification were adopted in 1972, some six years later. The latter statutes place the mental conditions of all family members squarely in issue. The standard of KRS 421.215(3)(c) has been met by operation of law. We are of the opinion that the depositions of [the psychiatrists] were properly taken.

*Id.* at 467. Further, this Court in construing the effect of the *Atwood* decision, has indicated that because mental health is an immediate issue in custody disputes, an automatic waiver of the psychiatrist-patient privilege results. *See Harris v. Commonwealth,* Ky. App., 688 S.W.2d 338, 340 (1984), *cert. denied,* 474 U.S. 842, 106 S.Ct. 127, 88 L.Ed.2d 104 (1985).

Burhl attempts to distinguish *Atwood* and diminish the force of its applicability by pointing out that *Atwood* interprets a statutory privilege now repealed and superseded by KRE 507. However, even a cursory reading reveals that there is little substantive difference between the two. We find *Atwood* to be applicable and dispositive of the issue before us. While *Atwood* deals with a privilege asserted by the mother on her own behalf, the Court pointed out that the mental health of *all* individuals involved is relevant. This includes those children who are the very subjects of custody disputes. The automatic waiver is just as applicable to them as it is to the parents.

We, therefore, find that the trial court committed reversible error when it precluded Dr. Bergman's testimony based upon the privilege asserted by Burhl.

Having thus concluded that the custodial parent may not invoke the psychotherapist-patient privilege for a child in custody litigation, the question remains as to how best to proceed. It is likely that the patient (child) has obtained assurances that the disclosures will remain secret. Neither the child nor the therapist wish to reveal the confidences. Yet a proper resolution of the question of best custody or best interest requires revelation. We will not attempt to require any specific procedure by the trial court, but allow broad discretion. The judge may personally and directly interview the therapist to determine what, if any, information is relevant and material for disclosure; or, the judge may appoint a guardian ad litem pursuant to CR 17.03 for the sole purpose of determining the best interests of the child and for recommending whether, and to what extent, the privilege should be waived.

## II.

■ Susan also asserts that the trial court erred when it permitted social worker Elaine Yarbrough to testify without first submitting her written report to the court and counsel. As authority for her position, Susan cites to KRS 403.300 which states in pertinent part:

> (1) In contested custody proceedings, ... the court may order an investigation and report concerning custodial arrangements for the child.
>
> . . . .
>
> (3) The clerk shall mail the investigator's report to counsel and to any party not represented by counsel at least 10 days prior to the hearing. The investigator shall make available to counsel ... the investigator's file of underlying data, and reports, complete texts of diagnostic reports made to the investigator pursuant to the provisions of subsection (2), and the names and addresses of all persons whom the investigator has consulted.

Susan cites as further authority *Lewis v. Lewis,* Ky., 534 S.W.2d 800 (1976), wherein our Supreme Court held that reversal of the trial court was proper where there was no compliance with the statutory mandates of KRS 403.300, such that appellant was effectively denied his right to meaningful cross-

examination when the clerk never forwarded a copy of the evaluator's report to him. Burhl's only argument in opposition to Susan's position is that the court never appointed/ordered Yarbrough to perform an evaluation, but rather that the parties stipulated she should perform the evaluation to avoid duplication of efforts, etc., and signed off on a pleading erroneously entitled "Agreed Order."

The record speaks for itself, and on June 2, 1992, the Jefferson Family Court, Division I, entered the following order found at page 492 in the record below:

> Motion having been made [by Burhl we might add] and the Court being sufficiently advised,
>
> It is Hereby Ordered that Elaine Yarbrough is hereby appointed to evaluate the parties and their children with respect to a determination and recommendation as to custody and said expert shall furnish her recommendation to the Court and the parties [sic] counsel simultaneously. Additionally, said expert is hereby authorized to employ any and all other experts that she might deem necessary for the purposes of testing or otherwise to assist her in her evaluation.

Finding KRS 403.300 and *Lewis* to be dispositive of this issue, the judgment of the trial court in this regard is reversed.

The ruling of the trial court is reversed, and this case is remanded for further proceedings consistent with this opinion.

WILHOIT, J., concurs in result and files separate opinion.

JOHNSTONE, J., concurs in part and dissents in part by separate opinion.

WILHOIT, Judge, concurring in result.

I concur in the result reached by Judge Howerton's opinion; however, I do not believe that the cases cited in that opinion support the result reached as to the patient-psychologist privilege. The cases cited deal with the waiver of a personal evidentiary privilege by a party to an action who is himself or herself asserting a claim on which the privileged evidence has a material bearing. The infant involved in this case is not a party to the action and is not asserting any claim. Indeed, the infant is not sui juris and is procedurally incapable of doing so. Although the opinion infers otherwise, an evidentiary privilege is not lost simply because the evidence subject to it is relevant. *See Southern Bluegrass Mental Health v. Angelucci,* Ky.App., 609 S.W.2d 931 (1980). There would be no need to establish a privilege for irrelevant evidence.

Nevertheless, KRE 507 does not establish absolute confidentiality for communications made by a patient, even if the patient does not fall within one of the exceptions listed at KRE 507(c). Instead, the rule establishes a right in the patient or his authorized representative to assert the privilege of nondisclosure. Surely the rule is not intended to preclude a court of equity from overriding a custodial parent's assertion of the privilege on behalf of his infant child in a proceeding such as this if the court deems disclosure to be in the best interest of the child. I see no reason for the appointment of a guardian ad litem and believe it would set a worrisome and wholly unnecessary precedent in child custody cases.

JOHNSTONE, Judge, concurring in part and dissenting in part:

I concur wholeheartedly in Judge Howerton's opinion regarding the exclusion of the psychiatric testimony. The difficult task of compliance with the mandates of KRS 403.340 becomes even more awesome for the trial judge without such vital information.

However, I believe that appellant's argument regarding the testimony of Elaine Brown Yarbrough is nothing more than a cleverly disguised red herring. Unlike the circumstances in *Lewis v. Lewis,* Ky., 534 S.W.2d 800 (1976), there was no order of the court appointing an "investigator" pursuant to KRS 403.300 in the case *sub judice.* In fact, there was no order at all.

More importantly, as in *Lewis,* KRS 403.300 is a statute routinely used by trial courts to order the Cabinet for Human Resources (or some similar governmental agency) to conduct a "home study." The "investigator's report" is generally a summary of

factual information gathered for the court. On the other hand, KRS 403.290 forms the basis for seeking the advice of "professional personnel" in a custody case. It contains no requirement that the clerk mail a report to counsel ten days prior to a hearing. The trial judge was on firm ground in allowing the testimony of the licensed clinical social worker.