[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
On September 27, 1996 the state filed a motion under Connecticut Practice Book § 760 requesting the court to order that a psychiatric examination of the defendant be conducted by its expert, Peter Zeman, M.D., on October 25, 1996 and November 1, 1996. The defendant objected to this motion, and an evidentiary hearing was held before this court on October 15, 1996. Defendant filed his brief on October 22, 1996, and the state filed its brief on October 29, 1996. The court has reviewed the hearing transcript, the briefs of the parties and the statutes and cases cited therein.
It is undisputed that Dr. Zeman and Dr. Kenneth Selig, both psychiatrists, were employees at the same time at the Institute for Living, Dr. Selig from September 1, 1987 until September 18, 1990 and Dr. Zeman during that same period as well as prior and subsequent thereto. In August, 1988, Dr. Selig was hired by Attorney John Watson of the Habeas Corpus Unit in the Office of the Chief Public Defender to evaluate this defendant to determine whether at the time of the crime for which the defendant had been convicted he was suffering from any mental disease or defect as related to the issues of guilt or innocence and mitigation. Dr. Selig examined the defendant on October 14, 1988, October 18, 1988 and February 27, 1989. These examinations were conducted during the period Dr. Selig and Dr. Zeman were both employed at the Institute for Living.[1] Dr. Selig testified that during 1988 and 1989 he met with Dr. Zeman forty-two (42) times generally about every other week and generally for an hour each time. Dr. Zeman testified that during these meetings, he and Dr. Selig spent at least half of their time discussing general issues of forensic psychiatry and the remainder of their time discussing cases on which Dr. Selig was working and cases on which Dr. Zeman was working. He further testified that they didn't discuss all the cases on which they were working; and that he did not recall discussing the case involving the defendant. The defendant claims that permitting Dr. Zeman to examine him would violate his rights to psychiatrist/patient confidentiality, attorney/client privilege as well as his constitutional rights against CT Page 9453 self-incrimination and to effective assistance of counsel.
1. The court finds that there was and is no privileged communication or psychiatric/patient confidentially between psychiatrist and patient under these circumstances as provided in CGS § 52-14d. The applicable case here is Bieluch v. Bieluch,190 Conn. 813, 819 (1983)[2] which states in pertinent part: "The purpose of the statutory privilege is to protect a therapeutic relationship. . . . Communications that bear no relationship to the purpose for which the privilege was enacted do not obtain shelter under the statute. . . ." The court inBieluch specifically rejected the proposition that, an examination for evaluation as in the case at bar was diagnosis and/or treatment. Additionally, both Dr. Selig and Dr. Zeman testified that the psychiatrist/patient privilege did not apply to Mr. Copas in this case.
2. The state has conceded that the attorney-client privilege applies to the relationship between the defendant and Dr. Selig. The real question is whether Dr. Zeman falls under and is bound by that privilege. Dr. Selig, as noted above, did discuss some of his cases with Dr. Zeman. However, he testified (a) he does not have a specific recollection of discussing the Copas evaluation with Dr. Zeman, (b) it may have been only one time that he did discuss it with him, (c) that he doesn't remember what they said, and (d) he does not recall discussing the issues of this case or analyzing the issues of this case with Dr. Zeman.
Dr. Zeman testified that he does not recall discussing theCopas case with Dr. Selig or seeing any notes or documents regarding that case. Dr. Selig testified that although he had retained notes of some of the cases he had discussed with Dr. Zeman, he had no notes of this case. Dr. Zeman testified that hehas a reasonably good memory particularly for interesting cases,and further testified that even though time has gone by, heremembers other cases he and Dr. Selig discussed specifically atthat time, approximately eight years ago, but he does notremember discussing the Copas case. (emphasis added). Dr. Zeman also testified that he does not believe he acquired any unfair advantage or insight into the defendant or his mental state or background or anything through his association with Dr. Selig that would be an unfair advantage over the defendant.
Based upon the testimony of Dr. Selig and Dr. Zeman, including their demeanor on the witness stand, their ability and CT Page 9454 lack thereof to recall certain events and the manner in which they answered questions, this court concludes by a preponderance of the evidence that Dr. Zeman did not receive through his association with Dr. Selig any information concerning Mr. Copas that would place Dr. Zeman under the attorney/client privilege as it pertains to Mr. Copas. To conclude otherwise would be mere speculation.
This conclusion is supported by the decision in State v.Bunkley, 202 Conn. 629, 653 (1987) in which the Supreme Court upheld the trial court holding that "there was no evidence, however, that O'Connor ever discussed the factual issues or merits of the defendant's case with the other prosecutors. Of more importance, there is no evidence that O'Connor confided in the other prosecutors any information or knowledge of the defendant's background that he had acquired during his prior association with the defendant." The O'Connor mentioned therein is assistant state's attorney Dennis O'Connor who had previously represented the defendant in criminal matters. He had had discussions with other prosecutors concerning the defendant's motion to dismiss and the elements of the crimes. In Bunkley and the case at bar, there was and is no evidence that factual issues or merits of the case were discussed with the prosecutors inBunkley or with Dr. Zeman in this case, or evidence that Mr. O'Connor or Dr. Selig confided any information or knowledge of the defendant's background, to the prosecutors in Bunkley or to Dr. Zeman in this case.
In Bunkley, the court at page 652 cited State v. Jones,180 Conn. 443 (1980) for the two part test to be employed when a claim of disqualification arises. The first part is that the moving party must establish that he (the client) had in the past enjoyed an attorney-client relationship with the attorney. In this case, it would be a past relationship with Dr. Zeman. The court finds that based upon the totality of the evidence, the defendant has failed to prove that he and Dr. Zeman had an attorney-client relationship.
Although it may be argued that there is an appearance of impropriety, the Supreme Court found in Bunkley and Jones that "the appearance of impropriety alone is simply too slender a reed on which to rest a disqualification order except in the rarest of cases. Board of Education of the City of New York v. Nyquist,590 F.2d 1241, 1247 (2d Cir. 1979)"[3] In the case at bar this court does not find the situation to fall in the category of CT Page 9455 rarest of cases.
The defendant has also claimed that Dr. Zeman may, at some stage of his examination or testimony, remember the content of his conversation with Dr. Selig regarding Mr. Copas if in fact it did exist, and this could be harmful to the defendant. The court finds that such a scenario is too speculative and too remote to merit further consideration.
3. The defendant appears to claim that the state's access to Dr. Selig's report and file concerning his prior examination of Mr. Copas would violate his attorney-client privilege with Dr. Selig or that the state being aware of Dr. Selig using that report and file to prepare a defense in this case would violate his attorney-client privilege and also his right to effective assistance of counsel.[4] The defendant also claims that his right against self incrimination would be violated. As to the right against self-incrimination, CPB § 760 prohibits the state from using anything it learns from Dr. Zeman's examination on the issue of guilt.[5] Additionally, as stated in Ross at page 214, a defendant's assertion of an insanity defense requires at least a partial waiver of his attorney/client privilege because, under CPB §§ 759 and 760, he must disclose defense psychiatric reports and submit to a court-ordered psychiatric examination on behalf of the state. Also, see State v. Manfredi,213 Conn. 500, 513 (1990) that a criminal defendant waives his fifth amendment privilege when he places his mental status in issue. As for the defendant being able to utilize Dr. Selig and his report and file in preparation of his defense without disclosing same to the state, the court can resolve that issue by an appropriate order.
As to whether the defendant will call Dr. Selig as a witness at trial, that is mere speculation since Dr. Borden, not Dr. Selig, has been designated as the defense expert. However, even in the unlikely event Dr. Selig is called as an expert witness by the defendant, the court finds that there would be no violation of the defendant's rights because there is no evidence that Dr. Selig communicated anything of substance or materiality to Dr. Zeman. There has been no violation of the attorney-client privilege, and the court can find no basis for believing that the state's utilizing Dr. Zeman will interfere with the defendant's use of Dr. Selig whether or not he testifies for the defendant.
Finally, although this court is fully aware of the CT Page 9456 defendant's rights in this matter, it is also cognizant of the state's right to a fair trial. The state's attorney, in oral argument stated that the state also has the right to the expert of its choice. The court finds this to be especially true in view of the burden of proof involving the insanity defense. The defendant has to prove the defense of mental disease or defect only by a preponderance of the evidence. See State v. Joyner,225 Conn. 450 (1993) with which this court is particularly familiar; also CGS §§ 53a-12(b) and 53a-13. The state is then required to disprove this defense by proof beyond a reasonable doubt.State v. Jarett, 218 Conn. 766 (1991), State v. Evans, 203 Conn. 212,238 (1987); which is a much higher standard of proof.
Accordingly, the state's motion for a psychiatric examination of the defendant by Dr. Peter Zeman dated September 27, 1996 is granted on the following conditions:
 1. The delivery of the Copas file at the Institute for Living to a neutral party to he agreed upon by the state and the defendant, which neutral party will retain custody and confidentially of same accessible only to Dr. Selig, with said neutral party prohibited from, in any way, disclosing if, when or where Dr. Selig reviews said file, until further order of this court. If the parties are unable to agree on such third party, the court will hear the parties and then make its own designation.
 2. When said file is turned over to the neutral third party the state will provide to this court an affidavit from Dr. Zeman in which he states that he has never looked at or become aware of the contents of said file.
Rittenband, J.