[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM ON REMAND OF APPLICATION FOR INJUNCTIVE RELIEF
On March 10, 1978, the plaintiff enrolled at Elan One (Elan), a private school and mental health facility located in Poland Springs, Maine, for alcohol abuse treatment. The plaintiff remained at Elan until February 18, 1980. Elan was founded by Gerald E. Davidson (Davidson), now deceased, and Joseph Ricci (Ricci) in 1970. Davidson, a licensed psychiatrist, was designated the medical director and Ricci was designated the executive and therapeutic director at Elan. At the time of the plaintiffs enrollment, Elan was licensed as a residential treatment facility by the state of Maine, Bureau of Rehabilitation, Office of Alcoholism and Drug Abuse. On August 1, 1979, the Maine Department of Mental Health and Corrections issued to Elan a conditional license designating it as a mental health facility, which remained effective through February, 28, 1980. In addition, during the relevant period, Elan received federal funding for its therapeutic program.
In 1998, the defendant convened a grand jury to investigate CT Page 14728 the 1975 death of Martha Moxley (Moxley). During the proceedings, the defendant subpoenaed Ricci and Peter McCann (McCann), an Elan counselor and primary care giver, to testify before the grand jury. On September 23, 1998, Ricci appeared but refused to testify, asserting that his communications with the plaintiff were privileged. On September 24, 1998, the defendant filed an application for a court order directing Ricci to testify before the investigatory grand jury under General Statutes § 54-47a. On that same day, the plaintiff filed an application for injunctive relief, pursuant to General Statutes § 52-146j, to enjoin the defendant from compelling Ricci, McCann, and anyone else at Elan from testifying or producing any records related to his alcohol abuse treatment. In response, on December 1, 1998, the defendant filed an answer and brief in opposition to the plaintiffs application. Thereafter, this court consolidated the plaintiffs application for injunctive relief and. the defendant's application for the order to compel.
On December 10, 1998, by an oral memorandum of decision, this court denied the application for injunctive relief based upon the plaintiffs failure to sustain his burden of proof that General Statutes § 52-146d was applicable. Concurrently, this court granted the defendant's application, under General Statutes §54-47a, for an order directing Ricci to testify before the grand jury concerning any statements made by the plaintiff in his presence or that were reported to him, excluding any statements made to Davidson, that related to the plaintiffs knowledge, if any, of the circumstances surrounding Moxley's death.
On December 29, 1998, the plaintiff filed a timely appeal of this court's ruling. On August 5, 1999, the Appellate Court released its decision on the plaintiffs appeal. See Skakel v.Benedict, 54 Conn. App. 663, ___ A.2d ___ (1999). Thereafter, on October 5, 1999, the parties submitted briefs regarding the reversal of this court's decision and the remand order issued by the Appellate Court.
In his appeal, the plaintiff claimed reversible error on the grounds that this court improperly "(1) concluded that the information sought by the defendant, Jonathan Benedict, was not protected by our statutory psychiatrist-patient privilege, (2) failed to apply the federal administrative regulations that were in effect at the time he received treatment for alcohol abuse and (3) determined that the state's delay in asserting its alleged right to information concerning his treatment for alcohol abuse CT Page 14729 did not violate his right to due process under the federal constitution." Skakel v. Benedict, supra, 54 Conn. App. 665. Specifically, the plaintiff argued that any of his communications with Ricci, McCann and anyone else at Elan are privileged or confidential or both, and therefore should not be disclosed.
The Appellate Court reversed the judgment of this court and remanded the case for further proceedings consistent with its decision. See Skakel v. Benedict, supra, 54 Conn. App. 665. Specifically, the Appellate Court remanded the case for a determination of "whether the plaintiff has satisfied the remaining criteria necessary to invoke the statutory psychiatrist-patient privilege." Id., 680-81. The Appellate Court also directed that this court apply the appropriate version of42 C.F.R. § 2.63 to determine whether the defendant is entitled to disclosure of the information sought. See Skakel v. Benedict,
supra, 693.
 I. The Statutory Psychiatrist-Patient Privilege
In its decision, the Appellate Court held that this court improperly denied the plaintiffs application for injunctive relief under the statutory psychiatrist-patient privilege, General Statutes § 52-146d et seq. Specifically, the Appellate Court stated that this court improperly required the plaintiff to establish that Elan was a `mental health facility' within the meaning of § 52-146d (5) and that the communications and records related to the diagnosis or treatment of a `mental condition' within the meaning of § 52-146d (2). See Skakel v. Benedict, supra, 54 Conn. App. 669.
As a preliminary matter, the Connecticut Supreme Court has stated that "[t]he people of this state enjoy a broad privilege in the confidentiality of their psychiatric communications and records." (Internal quotation marks omitted.) Home Ins. Co. v.Aetna Life Casualty Co., 235 Conn. 185, 195, 663 A.2d 1001
(1995). The primary purpose of the privilege "is to give the patient an incentive to make full disclosure to a physician in order to obtain effective treatment free from the embarrassment and invasion of privacy which could result from a doctor's testimony . . . Accordingly, the exceptions to the general rule of nondisclosure of communications between psychiatrist and patient were drafted narrowly to ensure that the confidentiality of such communications will be protected unless important countervailing considerations require their disclosure." CT Page 14730 (Citation omitted; internal quotation marks omitted.) Id.
Furthermore, the general rule for the applicability of the statutory privilege is that "[a]ll communications and records as defined in section 52-146d shall be confidential and shall be subject to the provisions of sections 52-146d to 52-146j, inclusive. Except as provided in sections 52-146f to 52-146i, inclusive, no person may disclose or transmit any communications and records or the substance or any part or any resume thereof which identify a patient to any person, corporation or governmental agency without the consent of the patient or his authorized representative." General Statutes § 52-146e (a). Moreover, "[t]he privilege covers not only communications between the patient and psychiatrist, but also all communications relating to the patient's mental condition between the patient's family and the psychiatrist and his staff and employees, as well as records and communications prepared at mental health facilities." (Internal quotation marks omitted.) State v. Kelly,208 Conn. 365, 379, 545 A.2d 1048 (1988).
The privilege prevents the disclosure of communications and records "relating to diagnosis or treatment of a patient's mental condition between the patient and a psychiatrist . . . or betweenany of such persons and a person participating under thesupervision of a psychiatrist in the accomplishment of theobjectives of diagnosis and treatment. . . ." (Emphasis added.) General Statutes § 52-146d (2). However, "[c]ommunications that bear no relationship to the purpose for which the privilege was enacted do not obtain shelter under the statute and are admissible subject to normal rules of evidence." Bieluch v.Bieluch, 190 Conn. 813, 819, 462 A.2d 1060 (1983).
General Statutes § 52-146d (6) defines a "patient" as "a person who communicates with or is treated by a psychiatrist in diagnosis or treatment." The plaintiff was treated at Elan, a residential treatment and mental health facility for alcohol abuse, from March 10, 1978 until February 18, 1980. Therefore at the time of his enrollment at Elan the plaintiff was a "patient" within the meaning of § 52-146d (6). However, the dispute between the parties arises in the determination of whether the communications made at Elan by the plaintiff to Ricci, McCann and his fellow patients qualify as communications to a psychiatrist or individuals under the supervision of a psychiatrist. See General Statutes § 52-146d (2).
CT Page 14731 General Statutes § 52-146d (7) defines a "psychiatrist" as "a person licensed to practice medicine who devotes a substantial portion of his time to the practice of psychiatry, or a person reasonably believed by the patient to be so qualified." Under the statutory privilege, communications between a patient and a psychiatrist or a patient and a person participating under the supervision of a psychiatrist in the accomplishment of the objectives of diagnosis and treatment are privileged. See General Statutes § 52-146d (2). It is undisputed that at the time of the plaintiffs enrollment at Elan, Davidson was the only licensed, practicing psychiatrist on the staff. The plaintiff fails to establish that he reasonably believed that Ricci, McCann or his fellow patients were licensed, practicing psychiatrists. Therefore, Davidson was the only psychiatrist on staff at Elan One, within the meaning of § 52-146d (7), during the period in question. Moreover, communications between the plaintiff and the Elan employees are also privileged. See State v. Kelly,
supra, 208 Conn. 379. Therefore, in the present case the privilege prevents disclosure of any communications between the plaintiff and Davidson or any of the Elan employees. See id.
Furthermore, communications between the plaintiff and a person participating in his diagnosis and treatment under the supervision of Davidson are also privileged. See General Statutes § 52-146d (2). The plaintiff fails to establish that the patients at Elan were under the supervision of Davidson in relation to his diagnosis and treatment. For example, the testimony of former Elan patient, Diane Hozman (Hozman) is instructive. Hozman testified that Davidson neither supervised the patients nor met with them to discuss the treatment or diagnosis of other patients. Indeed, even after Hozman had communications with the plaintiff she did not report the substance of her communications to Ricci, the therapeutic director. Therefore, Davidson did not supervise the patients in relation to the plaintiffs treatment or diagnosis. See General Statutes § 52-146 (2).
Moreover, communications between patients that bear no relationship to the principal purpose of the statutory privilege are not sheltered from disclosure and are admissible subject to the normal rules of evidence. See Bieluch v. Bieluch, supra,190 Conn. 819. Accordingly, the communications between the plaintiff and his fellow patients are not protected by the statutory psychiatrist-patient privilege. See General Statutes §52-146d (2). CT Page 14732
 II. The Confidentiality of Alcohol and Drug Abuse Patient Record Act
In his appeal, the plaintiff argued that "the trial court improperly failed to apply the federal administrative regulations, which afford confidentiality to alcohol patient records, that were in effect at the time he received treatment at Elan." Skakel v. Benedict, supra, 54 Conn. App. 681. The Appellate Court, reversing this court's rulings, held that "[i]n the absence of any clear evidence that the administrative agency intended the 1987 amendment to be applied retroactively, we conclude that the trial court's reliance on the current version of [42 C.F.R.] § 2.63 was improper." Skakel v. Benedict,
supra, 693. The Appellate Court directed that this court "apply the appropriate version of [42 C.F.R.] § 2.63 in determining whether disclosure of the information sought by the state is warranted." Skakel v. Benedict, supra, 693.
The Confidentiality of Alcohol and Drug Abuse Patient Record Act, 42 C.F.R. § 2.1 et seq. (1975),[1] sets forth the "minimum requirements for the protection of confidentiality of patient records." 42 C.F.R. § 2.4 (b). Indeed,42 C.F.R. § 2.1 et seq., "establishes a conditional and not an absolute right of nondisclosure of the records of patients involved in alcohol treatment." State v. Rollinson, 203 Conn. 641, 654,526 A.2d 1283 (1987). The purpose of the regulations is to provide broad coverage which extends to "records of the identity, diagnosis, prognosis, or treatment of any patient which are maintained in connection with the performance of any alcohol abuse or drug abuse prevention function." 42 C.F.R. § 2.12
(a).[2]
Moreover, the federal regulations prohibit the disclosure of "all information about patients, including their attendance or absence, physical whereabouts, or status as patients, whether or not recorded, in the possession of program personnel, except as provided in paragraph (d) of this subsection." (Emphasis added.)42 C.F.R. § 2.13 (c). Furthermore, § 2.22 provides: "The prohibitions of this part on disclosure of patient records or information apply to all individuals who are personnel oftreatment programs, researchers, auditors, evaluators, service organizations, or others having access to such records or information, and continue to apply to such individuals with respect to such records or information after the termination of CT Page 14733 their employment or other relationship or activity giving rise to such access." (Emphasis added.) 42 C.F.R. § 2.22.
The word "personnel" is not defined in either the federal regulations or its statutory authority. See 42 C.F.R. § 2.1
et seq. "Where the language of the statute is clear and unambiguous, it is assumed that the words themselves express the intent of the legislature and there is no need for statutory construction or a review of the legislative history." All BrandImporters, Inc. v. Department of Liquor Control, 213 Conn. 184,195, 567 A.2d 1156 (1989). "The words used in a statue must be given their commonly approved meaning, unless a contrary intent is clearly expressed." Smith v. Safeco Ins. Co. of America,225 Conn. 566, 570, 624 A.2d 892 (1993).
"It is a basic tenet of statutory construction that the legislature did not intend to enact meaningless provisions. . . . Accordingly, care must be taken to effectuate all provisions of the statute." (Citation omitted; internal quotation marks omitted.) State v. Szymkiewicz, 237 Conn. 613, 621, 678 A.2d 473
(1996). "Moreover, statutes must be construed, if possible, such that no clause, sentence or word shall be superfluous, void or insignificant. . . ." (Internal quotation marks omitted.) Id. "We presume that the legislature had a purpose for each sentence, clause or phrase in a legislative enactment, and that it did not intend to enact meaningless provisions." (Internal quotation marks omitted.) Hall v. Gilbert Bennett Mfg. Co.,241 Conn. 282, 303, 695 A.2d 1051 (1997).
In the absence of any indication that the legislature intended to give "personnel" a different meaning, the commonly approved meaning of this word should be utilized. See Skakel v.Benedict, supra, 54 Conn. App. 672-73. Indeed, "personnel" is defined as "a body of persons employed in some service. . . ." Webster's Third New International Dictionary. In the present case the legislature's deliberate use of the word "personnel" conveys its intention to restrict the applicability of the regulations to those individuals who are either current or former employees of a drug or alcohol abuse treatment program. See Smith v. Safeco Ins.Co. of America, supra, 225 Conn. 570. If "personnel" is interpreted any differently, this court would be ascribing to the regulation a meaning that is contrary to the intent of the legislature. See All Brand Importers, Inc. v. Department ofLiquor Control, supra, 213 Conn. 195.
CT Page 14734 Therefore, the prohibition from disclosure of communications or records maintained by personnel, under 42 C.F.R. § 2.22, applies only to those individuals who are Elan employees. In addition, the provisions of the regulations "continue to apply to such individuals with respect to such records or information after the termination of their employment or other relationship or activity giving rise to such access." 42 C.F.R. § 2.22.
However, communications between the plaintiff and individuals who are not current or former Elan employees are not subject to the anti-disclosure provisions of the federal administrative regulations. Because the legislature specifically defined the term "patient" as "any individual (whether referred to as a patient, client, or otherwise) who has applied for or been given diagnosis or treatment for drug abuse or alcohol abuse and includes any individual who, after arrest on a criminal charge, is interviewed and/or tested in connection with drug or alcohol abuse preliminary to a determination as to eligibility to participate in a treatment or rehabilitation program."42 C.F.R. § 2.11 (i). Regardless of what label Elan gave to the individuals enrolled in its program (patient, resident, student, director, etc.), pursuant to the federal regulations, these individuals are nonetheless "patients." See 42 C.F.R. § 2.11
(i). It is not the purpose of the regulations to prohibit disclosure of communications between patients, but rather between patients and program personnel. See 42 C.F.R. § 2.4.
Although disclosure of communications between the plaintiff and any current or former Elan employees is confidential pursuant to 42 C.F.R. § 2.1 et seq., disclosure may nonetheless be authorized by a court order. See 42 C.F.R. § 2.63 et seq. Specifically, a court may authorize disclosure where an application is made by "an investigative law enforcement, or prosecutorial agency for an order to permit disclosure of patient records for the purpose of conducting an investigation or prosecution of an individual who is, or who is believed to be, a present or former patient in a program."[3]42 C.F.R. § 2.65.
A judicial order authorizing disclosure of patient records is nonetheless limited to "the facts or dates of enrollment, discharge, attendance, medication, and similar objective data, and may include only such objective data as is necessary to fulfill the purposes for which the order is issued." (Emphasis added.) 42 C.F.R. § 2.63. In addition, prior to the issuance CT Page 14735 of a court order authorizing disclosure of objective data, the court must find that good cause[4] has been established, and that the four enumerated criteria set forth in 42 C.F.R. § 2.65
(c),[5] have been satisfied. See In re Marvin,48 Conn. App. 563, 568-69, 711 A.2d 756, cert. denied, 245 Conn. 916
(1998). Moreover, the court must also find that there is a need for the disclosure sought[6] and that there will be no adverse effects[7] occasioned by that disclosure. However, "the scope of an order issued pursuant to this subpart may not extend tocommunications by a patient to personnel of the program." See42 C.F.R. § 2.63.
Here, disclosure is sought by the defendant to determine whether the plaintiff made any statements to Ricci regarding the 1975 death of Moxley while he was obtaining alcohol abuse treatment at Elan. However, the information sought by the defendant is not disclosable because it is outside the scope of an order issued pursuant to the applicable subpart of the federal regulations. See 42 C.F.R. § 2.63 (a). The court may not authorize disclosure of communications between the plaintiff, a patient, and Ricci, a member of the Elan personnel. See42 C.F.R. § 2.63 (a). Accordingly, the defendant's application to compel Ricci to testify before the investigative grand jury that was previously granted by this court, after further consideration must be denied because the communications sought are confidential and may not be disclosed pursuant to an order issued by this court. See 42 C.F.R. § 2.63 (a). Moreover, because it is outside of the court's authority to issue an order authorizing disclosure of the communications between the plaintiff and Ricci, this court need not determine whether there is good cause for disclosure or that the enumerated criteria of42 C.F.R. § 2.65 (c) have been satisfied. See42 C.F.R. § 2.22.
The defendant also argues that the federal regulations conflict with the language of its statutory authority, and in the face of this conflict this court should rely upon the broader statutory language. In response, the plaintiff argues that the federal regulations, which are more expansive, should be applied where the program receives federal funding.
The statutory authority for 42 C.F.R. § 2.1 et seq., is derived from the Comprehensive Alcohol Abuse and Alcoholism Prevention, Treatment and Rehabilitation Act of 1970, now codified in 42 U.S.C.A. § 290dd-3 (West 1991). The statute provides that "the Secretary shall prescribe regulations to carry CT Page 14736 out the purposes of this section. These regulations may contain such definitions and may provide for such safeguards and procedures, including procedures and criteria for the issuance and scope of orders under subsection (b)(2)(C), as in the judgment of the Secretary are necessary or proper to effectuate the purposes of this section, to prevent circumvention or evasion thereof, or to facilitate compliance therewith."42 U.S.C.A. § 290dd-3(g) (West 1991).
The United States Supreme Court has stated: "Where the empowering provision of a statute states simply that the agency may `make . . . such rules and regulations as may be necessary to carry out the provisions of this Act,' we have held that the validity of a regulation promulgated thereunder will be sustained so long as it is `reasonably related to the purposes of the enabling legislation.'" Mourning v. Family Publications Service,Inc., 411 U.S. 356, 359, 93 S.Ct. 1652, 36 L.Ed. 318 (1972).
The First Circuit has stated: "Section 2.63 is rationally related to and furthers the congressional purpose of protecting patient confidentiality. That it is more limiting than § 290dd-3(b)(2)(C) is not surprising, given that Congress specifically delegated to the Secretary authority to determine the scope of any court order authorizing disclosure of hospital records covered by the statute." Whyte v. Connecticut Mut. LifeIns. Co., 818 F.2d 1005, 1010 (1st Cir. 1987). Moreover, the court in Whyte stated: "The regulation at issue was promulgated in 1975, and Congress amended 42 U.S.C. § 290dd-3 in 1976. Thus, Congress had the opportunity to require a revision of42 C.F.R. § 2.63, but declined to do so."Whyte v. Connecticut Mut. Life Ins.Co., supra, 818 F.2d 1010. Therefore, the defendant's contention that the statutory authority, which he argues is broader than the federal regulation, should be applied is without merit. Accordingly, after further consideration by this court, the defendant's application for an order to compel Ricci to testify before the investigative grand jury regarding his communications with the plaintiff is denied.
The plaintiffs application for injunctive relief is granted as it relates to Ricci, McCann and the other Elan personnel, as defined above, both current and former, because communications between them and the plaintiff were both confidential, pursuant to 42 C.F.R. § 2.1 et seq., and privileged, pursuant to General Statutes § 52-146d et seq. However, the plaintiffs application for injunctive relief as it relates to the former CT Page 14737 patients of Elan is denied because communications between them and the plaintiff were neither confidential, under42 C.F.R. § 2.1 et seq., nor privileged, under General Statutes § 52-146d et seq. The defendant's application for an order to compel Ricci to testify before the investigatory grand jury is now denied because any communications between him and the plaintiff are confidential, under General Statutes § 52-146d et seq., and privileged under42 C.F.R. § 2.1 et seq.
STODOLINK, JUDGE TRIAL REFEREE.